UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LETICIA FRANCINE STIDHUM,

                                 Plaintiff,

     -against-

161-10 HILLSIDE AUTO AVE, LLC d/b/a
HILLSIDE AUTO OUTLET, HILLSIDE AUTO
MALL INC d/b/a HILLSIDE AUTO MALL,
ISHAQUE THANWALLA, JORY BARON,
RONALD M BARON, and ANDRIS GUZMAN,

                               Defendants.
-------------------------------------------------------------------X

Case No.: 19-cv-5458 (RPK) (VMS)

Date of Service: March 12, 2021

### DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO THIS COURT'S FEBRUARY 19, 2021 ORDER

**MILMAN LABUDA LAW GROUP PLLC**

Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 303-1395 (direct dial)
(516) 328-0082 (facsimile)
emanuel@mllaborlaw.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ..................................................................................................1

**ARGUMENT**..............................................................................................................................3

    **I.   THE TRADITIONAL TOOLS OF STATUTORY INTERPRETATION INVALIDATES PLAINTIFF'S EARLY RIGHT-TO-SUE LETTER** ................................3

    **II.  THE COURT SHOULD NOT DEFER TO THE EEOC'S REGULATION** ..............6

**CONCLUSION** ........................................................................................................................10

## **TABLE OF AUTHORITIES**

**Cases**

23–34 94th St. Grocery Corp. v. N.Y.C. Bd. of Health,
    685 F.3d 174 (2d Cir. 2012)......................................................................................3

Auburn Hous. Auth. v. Martinez,
    277 F.3d 138 (2d Cir. 2002)......................................................................................3

Devine v. United States,
    202 F.3d 547 (2d Cir. 2000)......................................................................................3

Fed. Hous. Fin. Agency v. UBS Americas Inc.,
    712 F.3d 136 (2d Cir. 2013)......................................................................................4

Fowlkes v. Ironworkers Local 40,
    790 F.3d 378 (2d Cir. 2015)......................................................................................5

French v. Cty. of Erie,
    No. 12-CIV.-756-A, 2018 WL 647470 (W.D.N.Y. Jan. 31, 2018)...................................7

French v. Erie Cty. Bd. of Elections,
    No. 12-CIV.-00756A(F), 2015 WL 13681014 (W.D.N.Y. Mar. 3, 2015) .........................7

Martini v. Fed. Nat'l Mortg. Ass'n,
    178 F.3d 1336 (D.C. Cir. 1999) .................................................................. 2, 3, 5, 6, 9, 10

Mercer v. Dietz & Watson, Inc.,
    No. 15-CIV.-3928, 2015 WL 7294901 (E.D. Pa. Nov. 19, 2015) ...................................7

Montesano v. Principi,
    47 Fed. Appx. 608 (2d Cir. 2002) ..............................................................................5

New York v. Holiday Inns, Inc.,
    656 F. Supp. 675 (W.D.N.Y.1984)..............................................................................10

Pettus v. Morgenthau,
    554 F.3d 293 (2d Cir. 2009)......................................................................................3

Saulsbury v. Wismer & Becker, Inc.,
    644 F.2d 1251 (9th Cir. 1980)....................................................................................2, 4

Schindler Elevator Corp. v. United States ex rel. Kirk,
    563 U.S. 401 (2011) ................................................................................................3

Sims v. Trus Joist MacMillan,
    22 F.3d 1059 (11th Cir. 1994)..................................................................................2, 4, 6

United States v. Desposito,
    704 F.3d 221 (2d Cir. 2013).................................................................................................3

Walker v. United Parcel Serv. Inc.,
    240 F.3d 1268 (10th Cir. 2001)...........................................................................2, 4, 7

**Statutes**

42 U.S.C. § 2000e–5 ................................................................................................ 1, 2, 3, 4, 5

**Rules**

Fed. R. Civ. P. 8 ..........................................................................................................................5

Fed. R. Civ. P. 12 ....................................................................................................................2, 5

Fed. R. Civ. P. 56 ........................................................................................................................2

**Regulations**

29 C.F.R. § 1601.28 ....................................................................................................................1

**Legislative History**

118 CONG. REC. 1069 (1972)....................................................................................................4

118 CONG. REC. 7168 (1972)....................................................................................................4

1972 U.S.C.C.A.N. 2137, 2147 ...............................................................................................4, 6

1972 U.S.C.C.A.N. 2148............................................................................................................4

S.REP. NO. 92–415 (1971) .........................................................................................................4

H.R.REP. NO. 92–238 (1971) ................................................................................................4, 6

# **PRELIMINARY STATEMENT**

Pursuant to this Court's February 19, 2021 Order requiring supplemental briefing, and its March 11, 2021 Order granting Defendants leave to submit same by March 12, 2021, Defendants 161-10 Hillside Auto Ave, LLC d/b/a Hillside Auto Outlet ("Hillside Auto Outlet"), Hillside Auto Mall Inc d/b/a Hillside Auto Mall ("Hillside Auto Mall"), Ishaque Thanwalla ("Thanwalla"), Jory Baron ("Jory"), Ronald M Baron ("Baron"), and Andris Guzman ("Guzman") (collectively hereinafter the "Defendants") respectfully submit this supplemental memorandum of law in further support of their motion to dismiss Plaintiff's Complaint in its entirety.

As further set forth below, Defendants respectfully submit that using the traditional tools of statutory interpretation, 42 U.S.C. § 2000e-5(f)(1) (the "Statute") invalidates Plaintiff's early right-to-sue letter because Congress' intent in establishing the United States Equal Employment Opportunity Commission ("EEOC") as a stopgap to prevent opening the floodgates of discrimination lawsuits battering the doors to federal courthouses was to permit the EEOC to investigate charges of discrimination, decide whether to sue on behalf of charging parties, and permit conciliation efforts to dispose of cases informally through settlement conferences and other forms of alternative dispute resolution.

Defendants further respectfully submit that this Court should not defer to any apparent interpretation of the Statute contained in 29 C.F.R. § 1601.28 (the "Regulation") because the Statute is clear and unambiguous, and the Regulation does violence to its intent. To the extent that this Court finds that She statute is unclear or ambiguous (which it is not), the legislative history behind the Statute alone nonetheless requires a finding that the Regulation is invalid because the EEOC's duty to investigate, determine whether it will sue on behalf of a charging party, and to attempt conciliation efforts are separate, and the courts upholding it have conflated these duties.

As such, there is no need to look to the Regulation to interpret the Statute.

Further, the decisions cited by this Court in its February 19, 2021 Order from the Ninth, Tenth, Eleventh, and D.C. Circuit Courts of Appeals (hereinafter "Circuit Courts") are not in tension with one another upon reviewing them on the whole. Indeed, as an initial matter, the Ninth, Tenth, and Eleventh Circuit Courts' decisions are inapposite to the instant case because their procedural postures dealt with motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (hereinafter referred to as "Rule" or "Rules") or motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), whereas here, Defendants move for dismissal for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). See Walker v. United Parcel Serv. Inc., 240 F.3d 1268, 1275 (10th Cir. 2001) (hereinafter "Walker") (appeal from Order granting summary judgment pursuant to Rule 56); Sims v. Trus Joist MacMillan, 22 F.3d 1059, 1061-63 (11th Cir. 1994) (hereinafter "Sims") (appeal from Order dismissing complaint due to lack of subject matter jurisdiction pursuant to Rule 12(b)(1)); Saulsbury v. Wismer & Becker, Inc., 644 F.2d 1251, 1257 (9th Cir. 1980) (hereinafter "Saulsbury") (appeal from Order granting summary judgment pursuant to Rule 56).

This is but one of many reasons the decisions from the Ninth, Tenth, and Eleventh Circuit Courts are inapposite. Of great import, the Court in Martini v. Fed. Nat'l Mortg. Ass'n, 178 F.3d 1336, 1347 (D.C. Cir. 1999) (hereinafter "Martini") distinguished its decision as running counter to Sims and another decision from the Ninth Circuit Court of Appeals as examining the legislative history behind the Statute in conjunction with 42 U.S.C. § 2000e-5(b), which neither Walker nor Saulsbury did.

Plaintiff's claim under Title VII of the Civil Rights Act of 1964 ("Title VII") must therefore be dismissed without prejudice and remanded to the EEOC.

Plaintiff failed to exhaust her administrative remedies through the EEOC before bringing her Title VII claim, and deprived the parties of the process by which it may both investigate the charge *and*, separately, engage the parties in conciliation efforts.

Finally, the Court should decline to exercise supplemental jurisdiction over the remaining New York State and City law claims.

## ARGUMENT

**I.    THE TRADITIONAL TOOLS OF STATUTORY INTERPRETATION INVALIDATES PLAINTIFF'S EARLY RIGHT-TO-SUE LETTER**

In construing a statute, courts begin with the plain language, giving all undefined terms their ordinary meaning. See Schindler Elevator Corp. v. United States ex rel. Kirk, 563 U.S. 401 (2011); see also United States v. Desposito, 704 F.3d 221, 226 (2d Cir. 2013); 23–34 94th St. Grocery Corp. v. N.Y.C. Bd. of Health, 685 F.3d 174, 182 (2d Cir. 2012). Absent ambiguity, a court's analysis also ends with the statutory language. See Schindler Elevator Corp., 131 S.Ct. at 1893; Devine v. United States, 202 F.3d 547, 551 (2d Cir. 2000).

"[Courts] must presume that the statute says what it means." See Devine, 202 F.3d at 551. In interpreting a statute, however, courts are not to "construe each phrase literally or in isolation." See Pettus v. Morgenthau, 554 F.3d 293, 297 (2d Cir. 2009). Courts must "attempt to ascertain how a reasonable reader would understand the statutory text, considered as a whole." Id. If a court concludes that the text is ambiguous, it should look to legislative history and other tools of statutory interpretation. See Auburn Hous. Auth. v. Martinez, 277 F.3d 138, 143-44 (2d Cir. 2002).

The text of the Statute is ambiguous as to whether it serves as both a minimum and a maximum waiting time before a person claiming to be aggrieved by Title VII may proceed to pursuing her rights in federal court. See, e.g., Martini, 178 F.3d at 1344.

3

As a result, courts must then look to the legislative history. See Fed. Hous. Fin. Agency v. UBS Americas Inc., 712 F.3d 136, 141 (2d Cir. 2013). A cursory review of the legislative intent behind the Statute here makes it crystal clear that a plaintiff must wait 180 days before darkening the courtroom door with a federal lawsuit.

When Congress wrote section 2000e–5(f)(1) in 1972, it knew all about the long delays in EEOC processing of discrimination charges. See S.REP. NO. 92–415, at 23 (1971); see also H.R.REP. NO. 92–238 (1971), reprinted in 1972 U.S.C.C.A.N. 2137, 2147. Congress enacted the 180–day provision as "a means by which [an aggrieved party] may be able to escape from the administrative quagmire which occasionally surrounds a case caught in an overloaded administrative process." See 1972 U.S.C.C.A.N. at 2148; see S.REP. NO. 92–415S.REP. NO. 92–415, at 23. After the House and Senate passed the 1972 amendments, the Conference Committee explained in a statement accompanying the Conference Report:

> [The 180–day provision] is designed to make sure that the person aggrieved does not have to endure lengthy delays if the Commission ... does not act with due diligence and speed. Accordingly, the [180–day provision] allow[s] the person aggrieved to elect to pursue his or her own remedy under this title in the courts where there is agency inaction, dalliance or dismissal of the charge, or unsatisfactory resolution.

See 118 CONG. REC. 7168 (1972) (section-by-section analysis of 1972 amendments).

In addition, two (2) major sponsors of Title VII clearly understood the Statute to prohibit early suits. Senator Javits said that it required complainants "necessarily [to] sit [ ] around awaiting 6 months." See 118 CONG. REC. 1069 (1972) (Senate debate). Senator Dominick called it a "180–day private filing restriction." Id.

Crucially, subsection (b) of the Statute mandates the EEOC to investigate the charge. See 42 U.S.C. § 2000e-5(b).

4

Reading the statute as a whole therefore, and not limiting the Court's review to the provision in 42 U.S.C. § 2000e-5(f)(1), leads to the inescapable conclusion that a plaintiff must wait 180 days in order to proceed with filing suit. The Court in <u>Martini</u> held as much, while the courts in <u>Walker</u>, <u>Sims</u>, and <u>Saulsbury</u> never addressed this issue. As a result, this Court should align itself with the reasoning set forth in <u>Martini</u>.

But there are other reasons why <u>Walker</u>, <u>Sims</u>, and <u>Saulsbury</u> are to be afforded no weight.

In <u>Walker</u>, the Tenth Circuit acted in the interests of justice to save a plaintiff from being deprived of the right to pursue her Title VII claim on technical grounds. This risk and injustice is not present here, as Defendants do not seek the dismissal of Plaintiff's claims with prejudice, and a decision dismissing and remanding the case to the EEOC for investigation purposes and conciliation efforts will not deprive Plaintiff of her day in court should the parties not be able to reach a resolution.

In <u>Saulsbury</u>, the Ninth Circuit dealt with a similar situation where it also acted in the interests of justice to save a plaintiff from losing her right to pursue her claim due to technical, legal, and procedural grounds. Again, this risk is not present here.

Similarly, in <u>Sims</u>, the defendants there sought dismissal for lack of subject matter jurisdiction. Here, where Defendants move to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), and Plaintiff can in now way disavow her duty under Rule 8 to plead that she has exhausted her administrative remedies prior to proceeding to suit, the Eleventh Circuit's decision is inapposite. <u>See</u> <u>Fowlkes v. Ironworkers Local 40</u>, 790 F.3d 378, 384 (2d Cir. 2015); <u>see also</u> <u>Montesano v. Principi</u>, 47 Fed. Appx. 608, 609 (2d Cir. 2002) (summary order dismissing claims for failure to exhaust administrative remedies).

5

Here, Defendants received notice of the Plaintiff's charge of discrimination *on the very same day* they received her notice of right to sue. As such, the EEOC could not have investigated the claim, nor could it have even attempted conciliation, as it never gave Defendants any opportunity whatsoever to engage in conciliation efforts by issuing both notices simultaneously.

Therefore, Plaintiff's Title VII claim should be dismissed without prejudice and remanded to the EEOC so Plaintiff can properly exhaust her administrative remedies.

## II. THE COURT SHOULD NOT DEFER TO THE EEOC'S REGULATION

As set forth *supra* and in Martini, since the traditional statutory tools of interpretation require this Court to invalidate the early right-to-sue letter, no deference to the Regulation is in order. However, even assuming *arguendo* that it is, the Regulation is independently invalid.

While it is likely that – with the EEOC's inherent and undisputed backlog of cases – the charge of discrimination in this case would not have been timely investigated within 180 days, the EEOC nonetheless has an independent duty to engage in conciliation efforts, separate and apart from its mandate to investigate every charge. Their own notice of charge – which is sent to respondent employers – supports this position, as further set forth below.

Indeed, Congress indicated its belief that informal resolution of charges, even as late as the 180th day, would be preferable to allowing complainants to sue earlier. See Martini,178 F.3d at 1347; see also H.R.Rep. No. 92–238, 92nd Cong., 2d Sess., reprinted in 1972 U.S.Code Cong. & Ad.News, pp. 2137, 2144 (stating that the purpose of the Statute is to encourage conciliation in accordance with the congressional belief that voluntary settlement, rather than litigation, is the preferred mechanism for resolving these types of disputes); see also Sims, 22 F.3d at 1063 ("Congress clearly intended for the EEOC and the complaining party to attempt a reconciliation of the charge of discrimination before proceeding to federal court, and thus it imposed a time limit during which this reconciliation should occur").

As a matter of pragmatism, however, the EEOC need not *investigate* in order to attempt to *conciliate*. In practice, the EEOC frequently sends a respondent to a charge of discrimination notice of the charge together with a mediation invitation response form. See French v. Erie Cty. Bd. of Elections, No. 12-CIV.-00756A(F), 2015 WL 13681014, at *9 (W.D.N.Y. Mar. 3, 2015), report and recommendation adopted sub nom. French v. Cty. of Erie, No. 12-CIV.-756-A, 2018 WL 647470 (W.D.N.Y. Jan. 31, 2018) (discussing EEOC's request for respondent to agree to participate in mediation and referencing an EEOC Mediation Invitation Response Form). This form is used by the EEOC to independently determine whether a respondent employer wishes to engage in conciliation efforts without the charging party being made aware of same until a response is received. See Mercer v. Dietz & Watson, Inc., No. 15-CIV.-3928, 2015 WL 7294901, at *1 (E.D. Pa. Nov. 19, 2015) (discussing how the employer in that case returned the mediation response form and proposed three mediation dates: April 10, April 14, and April 22, 2015).

The Defendants here were deprived of this opportunity. Critically, none of the cases cited by this Court in its February 19, 2021 Order address this significant aspect of Title VII's statutory framework in establishing the EEOC, except for Walker. There, the Tenth Circuit gives UPS's argument that "neither Walker nor the EEOC had any information whatsoever regarding UPS's willingness to resolve the dispute through conciliation or otherwise" violates Title VII short shrift by divining from the record that "UPS has been aware of Walker's claim since at least November 1997 and has had ample time to take conciliatory action on its own initiative if it wished to do so." See Walker, 240 F.3d at 1273 n. 2. However, the EEOC's very system for conciliation efforts does not require either party to take such initiative, and for good reason. Parties to pending litigation, whether in court or before an administrative agency, are frequently reticent to indicate a willingness to engage in settlement efforts to avoid showing eagerness or appearing weak.

7

This is human nature, and the EEOC's mediation system recognizes this. As a result, the onus should not be placed on a party to get the ball rolling on conciliation efforts, especially where the EEOC was designed in mind by Congress with a view towards easing the burden on the federal court system by actively engaging in investigating and conciliating charges to dispose of discrimination cases before the need to file suit arises, and moreso where the EEOC's method of gauging a respondent's interest in conciliation efforts is measured by the EEOC without informing a charging party of same unless and until both parties agree to so engage in mediation. As set forth above, the Defendants here had no chance to engage in such efforts. See Declaration in Support of Defendants' Motion to Dismiss, Docket Entry 17, at ¶ 3, Exhibit A (where Box 5, providing that the EEOC has a Mediation program that gives the parties an opportunity to resolve the issues of a charge *without extensive investigation*, was unchecked) (emphasis added). This very form makes it evident that the EEOC's duties to investigate and conciliate are mutually exclusive.

Further, the letter provided to Plaintiff by the EEOC with notice to Defendants merely vaguely stated: "I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of these charges." See Id. at Docket Entry 17-1, page 10 of 13. In that regard, a certificate by an EEOC employee "certifying" that it is unlikely that a charge will be "processed" – does that mean investigated, mediated, conciliated? – pays mere lip service to the Statute's undeniable requirement for a plaintiff to wait 180 days before going to federal court in order to permit both an investigation and conciliation efforts. Tellingly, this "certification" does not provide any reasoning for why the EEOC will be unable to complete its "administrative processing," nor is it clear whether such "processing" prevents the EEOC from gauging a respondent employer's interest in mediation efforts. The EEOC thus could have and should have refused to issue a right-to-sue and checked off the aforementioned Box 5.

Finally, it is worth noting that the "certification" letter references *two* (2) charges by the Plaintiff against the same Defendant "Hillside Auto Outlet:" 520-2019-03296 and 520-2019-04747. See Id. The only notice of right to sue, however, is for the latter charge and not the former. Id. The same holds true for the notice of right to sue appended by the Plaintiff to her complaint. See Docket Entry 1-4. This is an additional and independent reason for granting Defendants' motion to dismiss, as it is entirely unclear what claims are raised in the first charge, and whether that charge was timely filed, among numerous other questions worthy of exploration at the EEOC.

Accordingly, the Regulation would violate Statute even if the EEOC could say with certainty that it cannot fully process a charge within 180 days, as the D.C. Circuit Court determined in Martini, let alone the fact there is absolutely no explanation for why the EEOC could not have engaged in mediation efforts in these cases. Because Congress "hoped that recourse to the private lawsuit will be the exception and not the rule," see 118 CONG. REC. 7168, it is abundantly evident that the EEOC should not have issued an early right-to-sue notice because doing so ultimately serves as an abdication of its responsibilities. It therefore bears emphasizing Martini's reasoning:

> Without authority to allow early suits, the EEOC would face more internal pressure, along with external pressure from complainants, to improve its investigatory capacities—for example, by streamlining its procedures for handling charges, by setting higher case clearance goals, by improving training, or by reallocating staff and other resources among regions or between national and regional offices—so that it could resolve as many charges as possible within 180 days. If such efforts proved inadequate to achieve statutory compliance, then the [EEOC] would be forced to ask Congress to appropriate additional funds. Whether authorizing early private suits is preferable to enlarging the [EEOC's] budget is a question for Congress, not the EEOC or this court. We conclude only that greater compliance with the mandatory duties that Congress expressly prescribed for the EEOC in [the Statute] will occur when all complainants must wait 180 days before filing suit than when the Commission may authorize them to sue earlier.

See 178 F.3d at 1347.

This Court should thus follow the D.C. Circuit Court and the long string of collected cases within it (see <u>Martini</u>, 178 F.3d at 1341 (collecting eleven (11) cases, including one within the Second Circuit, <u>New York v. Holiday Inns, Inc.</u>, 656 F. Supp. 675, 680 (W.D.N.Y. 1984))) in dismissing this case without prejudice until such time as the EEOC has attempted to resolve Plaintiff's charge for an additional eighty-nine (89) days (since her charge remained with the EEOC for ninety-one (91) days before Plaintiff filed suit) and permitting Plaintiff to file a new complaint in federal court only after the EEOC does so.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that their motion to dismiss be granted in its entirety together with such other and further relief as the Court deems just, equitable, and proper. The law – as Congress intended in enacting Title VII – requires only this result, and Defendants respectfully submit that the Ninth, Tenth, and Eleventh Circuit Courts' decisions referenced herein are inapposite and inappropriately regard the 180-day statutory requirement as requiring charging parties to sit idly by for no reason when there is, in fact, ample Congressional reasoning behind the requirement to allow 180 days to pass before filing suit in federal court.

Dated: Lake Success, New York
       March 12, 2021

Respectfully submitted,

**MILMAN LABUDA LAW GROUP PLLC**

/s/ Emanuel Kataev, Esq.
Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 303-1395 (direct dial)
(516) 328-0082 (facsimile)
emanuel@mllaborlaw.com

*Attorneys for Defendants*